J-S22044-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| IN RE: B.G.K, A/K/A N/K., A MINOR | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: K.K. | No. 2047 WDA 2014 |

Appeal from the Order entered November 26, 2014,
in the Court of Common Pleas of Allegheny County, Civil
Division, at No(s): TPR 145 of 2014

BEFORE:  PANELLA, LAZARUS, and STRASSBURGER*, JJ.

MEMORANDUM BY STRASSBURGER, J.:                    **FILED MAY 15, 2015**

K.K. (Mother) appeals from the order entered November 26, 2014, in the Court of Common Pleas of Allegheny County, which terminated involuntarily her parental rights to her minor daughter, B.G.K, a/k/a N/K (Child), born in March of 2013.[1]  We affirm.

At the time Child was born, both she and Mother tested positive for crack cocaine.   As a result, Child was placed in the care of the Allegheny County Office of Children, Youth and Families (CYF) immediately upon her release from the hospital.  Mother has a lengthy prior history with CYF, and her parental rights have been terminated as to seven other children.[2]  Child was adjudicated dependent by order dated May 3, 2013.

---

* Retired Senior Judge specially assigned to the Superior Court.

[1] The parental rights of Child's unknown father were terminated by a separate order entered that same day.  Child's father is not a party to the instant appeal.

[2] The record indicates that Mother's parental rights to her seven older children were terminated by voluntary consent decree due to Mother's mental health and substance abuse issues.

On August 18, 2014, CYF filed a petition to terminate involuntarily the parental rights of Mother. A hearing was held on November 26, 2014. The trial court entered its order terminating Mother's rights that same day. Mother timely filed a notice of appeal, along with a concise statement of errors complained of on appeal.

Mother now raises the following issue for our review. "Did the trial court abuse its discretion and/or err as a matter of law in concluding that termination of [Mother's] parental rights would serve the needs and welfare of the Child pursuant to 23 Pa.C.S. §[]2511(b)?" Mother's Brief at 5.

We consider Mother's claim mindful of our well-settled standard of review.

> The standard of review in termination of parental rights cases requires appellate courts to accept the findings of fact and credibility determinations of the trial court if they are supported by the record. If the factual findings are supported, appellate courts review to determine if the trial court made an error of law or abused its discretion. A decision may be reversed for an abuse of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will. The trial court's decision, however, should not be reversed merely because the record would support a different result. We have previously emphasized our deference to trial courts that often have first-hand observations of the parties spanning multiple hearings.

*In re T.S.M.*, 71 A.3d 251, 267 (Pa. 2013) (citations and quotation marks omitted).

Termination of parental rights is governed by Section 2511 of the Adoption Act, 23 Pa.C.S. §§ 2101-2938, which requires a bifurcated analysis.

> Initially, the focus is on the conduct of the parent. The party seeking termination must prove by clear and convincing evidence that the parent's conduct satisfies the statutory grounds for termination delineated in Section 2511(a). Only if the court determines that the parent's conduct warrants termination of his or her parental rights does the court engage in the second part of the analysis pursuant to Section 2511(b): determination of the needs and welfare of the child under the standard of best interests of the child. One major aspect of the needs and welfare analysis concerns the nature and status of the emotional bond between parent and child, with close attention paid to the effect on the child of permanently severing any such bond.

*In re L.M.*, 923 A.2d 505, 511 (Pa. Super. 2007) (citations omitted).

In this case, the trial court terminated Mother's parental rights pursuant to Sections 2511(a)(2), (5), (8), and (b). On appeal, Mother concedes that CYF presented clear and convincing evidence that her parental rights should be terminated pursuant to Section 2511(a). Mother's Brief at 9 ("CYF, the petitioner, did clearly and convincingly establish threshold grounds for termination pursuant to 23 Pa.C.S. §[]2511(a)(2)."). Thus, we need only consider whether the court abused its discretion by terminating Mother's parental rights pursuant to Section 2511(b), which provides as follows.

> **(b) Other considerations.--**The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on

the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S. § 2511(b).

Subsection 2511(b) focuses on whether termination of parental rights would best serve the developmental, physical, and emotional needs and welfare of the child. In *In re C.M.S.*, 884 A.2d 1284, 1287 (Pa. Super. 2005), this Court stated, "Intangibles such as love, comfort, security, and stability are involved in the inquiry into the needs and welfare of the child." In addition, we instructed that the trial court must also discern the nature and status of the parent-child bond, with utmost attention to the effect on the child of permanently severing that bond. However, in cases where there is no evidence of a bond between a parent and child, it is reasonable to infer that no bond exists. Accordingly, the extent of the bond-effect analysis necessarily depends on the circumstances of the particular case.

*In re Adoption of J.M.*, 991 A.2d 321, 324 (Pa. Super. 2010) (some citations omitted).

Here, the trial court concluded that terminating Mother's parental rights would be in Child's best interest. Mother argues that the court abused its discretion because it was not provided with sufficient evidence concerning the impact that terminating her parental rights would have on Child. Mother's Brief at 12. Mother also contends that the court relied improperly on Mother's failings as a parent, rather than the needs and welfare of Child, when conducting its Section 2511(b) analysis. *Id.* at 12-13.

- 4 -

After a thorough review of the record in this matter, we conclude that the trial court did not abuse its discretion by terminating involuntarily Mother's parental rights to Child. Child has been out of Mother's care for the entirety of her life. The court emphasized that Child is bonded with her foster parents, and that Child has no bond with Mother. Trial Court Opinion, 1/20/2015, at 7-10. Further, the court found Child's foster parents to be attentive to Child's medical needs, including strict management of her severe food allergies. *Id.* at 8.

During the termination hearing, CYF caseworker, David Underwood, testified that a Family Service Plan (FSP) was prepared for Mother, under which she was required to, *inter alia*, maintain recovery from substance abuse. N.T., 11/26/2014, at 10. Mr. Underwood noted that Mother was incarcerated from April 3, 2013, until July 8, 2013, and that Mother participated in the House of Hope drug and alcohol program during this time. *Id.* at 14. Mother again was incarcerated from August 23, 2013 until October 18, 2013, after which she attended a dual-diagnosis program. *Id.* Mother was released to POWER halfway house on December 10, 2013, where she received additional drug and alcohol treatment. *Id.* Mother was discharged from the halfway house on May 27, 2014, and "disappeared" shortly thereafter. *Id.* at 15. Mr. Underwood last heard from Mother on June 6, 2014. *Id.* at 16. Mother again was incarcerated on July 26, 2014. *Id.* at 17. CYF did not discover that Mother had been incarcerated until

approximately September of 2014. *Id.* at 30. Mother reported to Mr. Underwood that she was in a drug and alcohol program while incarcerated. *Id.* at 32. When Mother was discharged from incarceration on November 11, 2014, she was sent to Delaware House, "which is a three-quarter drug and alcohol home." *Id.* at 15.

With respect to visitation, Mr. Underwood testified that Mother first visited with Child on June 15, 2013. *Id.* at 20. Mother then had 20 visits with Child during her time at POWER. *Id.* Mother had two visits while she most recently was incarcerated, on October 4, 2014, and November 1, 2014. *Id.* Mother also participated in visits through the Three Rivers Adoption Council from March of 2013 through May of 2014. *Id.* Mr. Underwood testified that there had been no visits between Mother and Child from May 2014 to October 2014. *Id.* Mr. Underwood noted that Mother's interactions with Child were "appropriate," but that Mother would sometimes feed Child food that Child was allergic to. *Id.* at 21-22.

When asked whether Mother and Child are bonded, Mr. Underwood opined that Mother had not "been around consistently for [Child] to fully understand [M]other's role in her life …." *Id.* at 25. In contrast, Mr. Underwood noted that Child has been in a pre-adoptive foster home since shortly after her birth, and that Child has a bond with her foster parents.

*Id.* at 25-26. Mr. Underwood stated that it would be in Child's best interest to be adopted.[3] *Id.* at 27.

Mother testified that she most recently was incarcerated from July 25, 2014, until November 11, 2014. *Id.* at 46. According to Mother, she relapsed in June of 2014, and was charged with prostitution. *Id.* at 46-47, 53. Mother stated that she has not been convicted of that charge, and that she intended on going to trial. *Id.* at 47. Mother indicated that she completed a drug and alcohol program while in jail, as well as a cognitive behavioral therapy program. *Id.* at 48-49. In addition, Mother testified that she is addressing her drug and mental health issues at Delaware House, and that she anticipated being discharged on February 8, 2015. *Id.* at 49-50. Mother stated that she wants to parent Child, and that she is capable of doing so. *Id.* at 51.

Thus, the testimony presented during Mother's termination hearing confirms that it is in Child's best interest to terminate Mother's parental rights. Child is bonded with her foster parents, who provide her with appropriate care and support. In contrast, Mother has never cared for Child, nor does she appear to grasp the severity of Child's dietary restrictions. Additionally, there is no evidence to suggest that Child is bonded with

---

[3] CYF also entered into evidence a bonding evaluation as to Child and the foster parents performed by psychologist Neil Rosenblum. *See* CYF Exhibit 4. In his evaluation, Dr. Rosenblum noted that Child refers to her foster parents as "mamma" and "da-da," and that [t]here is no question that [Child] is very strongly attached to [the] foster parents." *Id.* at 2-3.

- 7 -

Mother. ***See J.M.***, 991 A.2d at 324 ("[I]n cases where there is no evidence of a bond between a parent and child, it is reasonable to infer that no bond exists.") (citing ***In re K.Z.S.***, 946 A.2d 753, 762–63 (Pa. Super. 2008)). Further, Mother previously has lost her parental rights to seven other children. She has a considerable history of drug use and incarceration, and it is not likely that Mother ever will be able to care for Child. It is not in Child's best interest to be denied permanence and stability any longer. ***Id.*** at 325 (quoting ***In re Adoption of R.J.S.,*** 901 A.2d 502, 513 (Pa. Super. 2006)) ("'The court cannot and will not subordinate indefinitely a child's need for permanence and stability to a parent's claims of progress and hope for the future.'").

Moreover, Mother's argument that the trial court focused improperly on Mother's failings as a parent, rather that Child's best interest and welfare, does not entitle her to relief. Mother is correct that "[t]he focus in terminating parental rights under [S]ection 2511(a) is on the parent, but the focus turns to the children under [S]ection 2511(b)." ***In re M.T.***, 101 A.3d 1163, 1181 (Pa. Super. 2014) (*en banc*) (citing ***In re Adoption of C.L.G.,*** 956 A.2d 999, 1008 (Pa. Super. 2008) (*en banc*)). However, it is clear that a parent's inability to care for his or her child is a relevant consideration in determining whether termination will serve a child's needs and welfare. ***See, e.g., M.T.***, 101 A.3d at 1182 (quoting favorably from a trial court opinion addressing the parents' "inability to consistently provide a safe and

secure environment for their children" as part of its Section 2511(b) analysis).

Accordingly, because we conclude that the trial court did not abuse its discretion by terminating involuntarily Mother's parental rights to Child, we affirm the order of the trial court.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 5/15/2015